IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


| | |
|---|---|
| LISA MICHELLE DINGUS, ) | |
| Plaintiff ) | |
| v. ) | No. 2:06-cv-181 |
| MICHAEL J. ASTRUE,[1] ) Commissioner of Social Security, ) | |
| Defendant ) | |

**MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act. For the reasons that follow, plaintiff's motion for judgment on the pleadings [Court File #12] will be denied, defendant's motion for summary judgment [Court File #15] will be granted, and the final decision of the Commissioner will be affirmed.

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure and Title 42 of the United States Code, Section 405(g), Michael J. Astrue is automatically substituted as the defendant in this civil action.

I.

***The Administrative Hearing***

Plaintiff and her husband, William Dingus, testified at her hearing before the Administrative Law Judge (ALJ). They both testified that plaintiff experienced nausea and vomiting as the result of a gastrointestinal disorder. Plaintiff testified that she had undergone several procedures that involved stretching and burning her esophagus to allow her food to go down. She further testified that she was able to eat regular food, except for spicy foods, and had not lost weight because of the steroids in her asthma medication. She also testified that she had received mental health treatment and that she had problems concentrating and with mood swings. Plaintiff and her husband both testified that Mr. Dingus and their teenage children did most of the household chores.

Plaintiff told the state agency that she spent an average day sitting around and doing nothing; that she had stomach problems and vomited frequently, was depressed, had problems concentrating, and took breathing treatments. She described her activities as including doing laundry and cooking, shopping, attending doctors' appointments, going to her children's school as needed, reading, attending church, and talking on the telephone.

## II.

### *Medical Evidence*

In January 2002, Dr. Larry J. Foster, a pulmonologist, diagnosed the plaintiff as suffering from chronic bronchial asthma, stable on present medications, and panic attacks with hyperventilation. He also felt there was a significant underlying element of depression which might require therapy through her primary care physician. In March 2003, Dr. Foster also noted that plaintiff had a history of chronic bronchial asthma and panic attacks associated with hyperventilation. At that time, his diagnoses were bronchial asthma with apparent good control on present medication and bouts of difficulty breathing at night with major differential between that of panic attacks with hyperventilation versus acid reflux symptoms or a combination of the two.

Plaintiff was treated by Dr. Michael J. Sullivan, a gastroenterologist, who noted in February 2003 that the plaintiff had bouts of severe heartburn and reflux, as well as nausea and diarrhea. She had missed a lot of work because of the vomiting and reflux and had problems at night with shortness of breath and wheezing. Dr. Sullivan diagnosed plaintiff as suffering from chronic nausea and vomiting, a history of antritis, Barrett's esophagus and hiatal hernia, a history of asthma, chronic anxiety and abnormal weight gain. The plaintiff underwent

3

esophageal dilation which revealed Barrett's in the distal esophagus, LES coagulation, chronic gastritis, and a normal duodenal bulb and duodenum. She underwent dilation in February 2005, and it was noted that she was having a severe problem with nausea, vomiting and dysphagia. In May 2005, it was noted that plaintiff was not doing well at all. She was again diagnosed as suffering from gastroesophageal reflux with intermittent aspiration, intermittent nausea and vomiting, mild dysphagia, and abnormal bloating and fullness. In July 2005, it was noted that she had chronic motility disorder, along with nausea with intermittent vomiting possibly secondary to chronic motility disorder, gastroesophageal reflux disease status post LES X3, abdominal bloating and fullness and fatty infiltration of the liver.

Plaintiff came under the care of Holston Nolachucky Mental Health in January 2003 upon referral by her primary care physician, Dr. Breckenridge. It was noted that she had asthma, acid reflux and migraines, and she was diagnosed as suffering from depressive disorder NOS and panic disorder with agoraphobia. Her global assessment of functioning scale was 40 and her highest in the last six months had been 40. In September 2003, it was noted that her mood and affect were depressed. In January 2004, it was noted that her mood and affect were more depressed and that the plaintiff reported episodes of panic to the point that she had stopped going to the grocery store. In March 2004, it was noted that she had a

working diagnosis of major depressive disorder and panic disorder with agoraphobia. On March 30, 2004, it was noted that her affect and mood were very depressed. In August 2004, it was noted that the plaintiff did not do well and an anxiety scale and depression scale indicated severe levels of both. In July 2005, it was noted that plaintiff's mood and affect were anxious and that plaintiff reported problems with acid reflux and depression which caused her to spend the day in bed, not even bathing or washing her hair.

Plaintiff later was treated by Dr. Philip T. Thwing, a family practitioner. In August 2004, he diagnosed her as suffering from allergies, asthma, major depression, and quite severe panic disorder with agoraphobia.

In May 2004, plaintiff complained of neck and back pain after riding a roller coaster.

Plaintiff also came under the care of Dr. Timothy Sullivan, a psychiatrist at Behavioral Health of Greeneville, Inc. She gave a disability of mood swings with a history of manic episodes including pressured speech, flight of ideas, racing thoughts, grandiosity, decreased need for sleep, increased motor activity, poor attention span, easily distracted, impulsive pleasure oriented behaviors without regard for painful consequences, lack of follow through on projects, as well as

5

depressive spectrums involving feelings of helplessness, hopelessness, loss of appetite, depressed mood, anhedonia, psycho motor agitation, sleeplessness, lack of energy/motivation, poor concentration, and on occasion indecisiveness. In March 2003, plaintiff told the examiner that she was requesting disability and stated that she needed to work and asked for assistance in obtaining disability. However, it was noted that she was still able to go to the tanning salon. Dr. Sullivan diagnosed bipolar I disorder, MRE, depressed, severe without psychotic features, panic disorder with agoraphobia, and generalized anxiety disorder. Dr. Sullivan prescribed medication and noted in November 2005 that she was experiencing a great deal of anxiety.

Plaintiff was evaluated by Dr. Karl W. Konrad on October 3, 2005, in a consultative evaluation. He diagnosed hepatomegaly and on pulmonary function trials her TVC was 2.64L (69%) and her FEV1 was 2.51L (83%) with efforts submaximal in spite of encouragement. He did not believe her impairments affected her ability to work.

Plaintiff was also evaluated by Mr. Art Stair, a clinical psychologist, and Dr. Charlton Stanley. Dr. Stanley noted that the plaintiff reported a moderate degree of anxiety characterized by worry, tension and sleep disturbance. He noted that in general, malingering should not be ruled out with this claimant. Both her MMPI-2

and SIRS scores indicated the possibility that she was exaggerating her symptomatology. He opined that the SIRS test demonstrated that there was at least an 81% probability that the plaintiff was exaggerating her symptomatology. He thought that the plaintiff had a mild underlying depressive disorder that mildly impaired her ability to be persistent and to concentrate on tasks at work. He thought that her GAF was 64. He opined that the plaintiff was only slightly limited in her ability to interact with the public, with supervisors, co-workers, to respond appropriately to work pressures in a usual work setting and to respond appropriately to changes in a routine work setting.

Plaintiff continued to be cared for by Dr. Sullivan, who noted in October 2005 that plaintiff was suffering from nausea and vomiting, Barrett's esophagus, gastroesophageal reflux disease - improved, colonic motility disorder, improved, and fatty infiltration of the liver, as well as anxiety. Dr. Sullivan completed a certification of health care provider for the Department of Labor which noted that plaintiff has chronic motility disorder which resulted in nausea and vomiting on a persistent basis. She had severe allergic reactions to medication given for nausea and her nausea was very severe resulting in her spouse missing work to care for her and her children. He opined that she was currently incapacitated. He also completed a GERD and Barrett's esophagus questionnaire which reported that the plaintiff had

to be absent from work for a number of days because of her condition and that she could not work in a competitive job market.

Dr. Sullivan opined that the plaintiff is seriously limited but not precluded in her ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stressors, function independently, and maintain attention and concentration. She had no useful ability to carry out complex job instructions and a seriously limited ability to carry out simple job instructions. He also opined that she had seriously limited ability to relate predictably in social situations and to demonstrate reliability. He noted that she had bipolar disorder, panic disorder with agoraphobia, and generalized anxiety disorder. Her ability to concentrate and remain focused in order to follow rules, relate to co-workers, deal with her peer or the general public, interact with supervisors, deal with work stressors and function independently were poor to non-existent in these areas. She had an inability to complete tasks due to the high level of anxiety and associated depressive symptoms that she experienced. Her depression was relatively persistent but she also experienced periods of mania. It was noted that she experienced periods of extreme anxiety in which the frequency and the severity of the attacks varied and were unpredictable. He further opined that the plaintiff might suffer from repeated attacks for weeks and then have periods of respite and would have short bursts of very severe attacks. With her generalized anxiety, he

opined that she might find it difficult to control the worry which included chronic and excessive worry about events that were unlikely to occur. The anxiety and worry were accompanied by other physical and emotional symptoms such as restlessness or feeling on edge, being easily fatigued, having difficulty concentrating, irritability, muscle tension and sleep disturbance.

Upon a review of the medical evidence submitted and the hearing testimony, the ALJ concluded that the plaintiff did not have an impairment or impairments that significantly limited her ability to perform work-related activities and therefore that she did not have a "severe" impairment within the meaning of the Social Security Act.

III.

*Standard of Review*

"The findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. ..." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so

because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). The Court also reviews the ALJ's decision to determine "whether the [Commissioner] employed the proper legal standards in reaching her conclusion." *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). When the ALJ's findings are not supported by substantial evidence, or if the ALJ has committed legal error, the reviewing court shall reverse and remand the case for further administrative proceedings unless "the proof of disability is overwhelming or ... the proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Secretary of Health & Human Services*, 17 F.3d 171, 176 (6th Cir. 1994).

IV.

***Application of the Five-Step Evaluation Process***

Disability is evaluated pursuant to a five-step analysis summarized as follows:

    (1)    If claimant is capable of doing substantial gainful activity, he is not disabled.

    (2)    If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

(3)　If claimant is not doing substantial gainful activity and is suffering from a severe impairment that lasted or is expected to last for a continuous period of at least 12 months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)　If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

(5)　Even if claimant's impairment does not prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 CFR § 404.1520). Plaintiff bears the burden of proof in the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id.*

V.

*Analysis*

Plaintiff alleged that she became disabled on October 1, 2002, due to asthma, stomach problems, migraine headaches, and depression and anxiety with nervousness. The ALJ concluded that the plaintiff did not have an impairment or impairments that significantly limited her ability to perform work-related activities and

11

therefore did not have a "severe" impairment.  Thus, he stopped his analysis at step two of the sequential evaluation process.  I find that the ALJ's determination that the plaintiff did not have a severe impairment is supported by substantial evidence in the record.

With respect to plaintiff's asthma, the record is clear that it was under good control and did not interfere with her ability to perform work-related activities.  With respect to her claim of migraine headaches, plaintiff stated herself that those went away after she got glasses.

With respect to plaintiff's claims of an emotional disorder with depression and anxiety with nervousness or anxiety with agoraphobia, the ALJ was warranted in relying on the report of the psychologist, Dr. Stanley, who reported that the results of the MMPI-2 test were invalid and highly suggestive of malingering or exaggerated symptomology.  In fact, he opined that the SIRS test demonstrated there was at least an 81% probability that plaintiff was exaggerating her symptomology.  He diagnosed probable symptom amplification and depressive disorder, mild.  He further opined that the plaintiff was able to understand simple information or directions, had adequate ability to comprehend and implement multi-step complex instructions, and had no impairment in social relationships.  Dr. Stanley also opined that the plaintiff had mild impairment in her ability to persist and

concentrate on tasks, but noted that it was difficult to determine her ability to maintain persistence and concentration due to the possibility of malingering.

Dr. Stanley's conclusion is further supported by the report in March 2003 that plaintiff was requesting disability and stated that she needed to work and asked for assistance in obtaining disability. At that time, she was able to still go to a tanning salon. In May 2004, plaintiff complained of neck and back pain after riding a roller coaster. The ALJ would have been warranted in concluding that someone riding a roller coaster would be inconsistent with someone suffering from panic attacks with agoraphobia and daily vomiting.

With respect to plaintiff's stomach problems, the ALJ was likewise warranted in relying on Dr. Stanley's test results suggestive of malingering or exaggerated symptomatology and the report of Dr. Konrad that plaintiff had no work limitations.

The ultimate determination of disability is the prerogative of the Commissioner, not a treating physician. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). A lack of physical restrictions constitutes substantial evidence for a finding of non-disability. *Longworth v. Commissioner*, 402 F.3d 591, 596 (6th Cir. 2005). The ALJ's credibility determinations are entitled to considerable deference.

*Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 34 (6th Cir. 1993) (quoting *Hardaway v. Secretary of Health & Human Services*, 823 F.2d 922, 928 (6th Cir. 1987)) ("Since the ALJ had the opportunity to observe the demeanor of a witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference."). In this case, the ALJ had the opportunity to observe the demeanor of both plaintiff and her husband at the hearing, to consider their daily activities and consider the evidence from the medical records indicating that plaintiff might be exaggerating her symptomatology. There is substantial evidence in the record to support his conclusion.

VI.

### *Conclusion*

In light of the foregoing, plaintiff's motion for judgment on the pleadings [Court File #12] is DENIED; defendant's motion for summary judgment [Court File #15] is GRANTED; and the final decision of the defendant Commissioner is hereby AFFIRMED.

Enter judgment accordingly.

*s/ James H. Jarvis*
UNITED STATES DISTRICT JUDGE
